al. Good morning, Your Honors. I'm Teresa Reneker, appearing on behalf of the appellant, Joanna Pineda. Let me ask you to speak right up so everyone can hear you. Good morning. This is Ms. Baida's appeal from the district court's decision finding that First Unum Life Insurance Company did not abuse its discretion in terminating her benefits under her employer's disability plan. And the basis for the court's finding was that First Unum had reasonably relied on the opinion of a physician in Connecticut who reviewed Ms. Baida's records. The decision should be reversed for two reasons. First, the district court erred in enforcing the policy provision conferring discretionary authority on Unum rather than conducting a de novo review. Second, if the discretionary authority provision is enforceable, then the district court's decision should be reversed under this court's intervening decision in abating v. Alta Life. I'll address the de novo review issue first. The district court erred in giving effect to the plan's discretionary language in light of the California Insurance Commissioner's opinion that the language violates California insurance law. The opinion's just an opinion, right? This is not a statute. It's not even a regulation. It's simply the opinion of the Insurance Commissioner of California, correct? That's correct. And doesn't it by its own terms say it's prospective only? No. The notice to which Let me stop you. It doesn't say by its own terms that the policy applies prospectively only? No. The opinion letter does not say that. But that's what the department construed it as. No. The department, that's not correct. There are two actions that the department took. It issued an opinion letter affirming its longstanding policy of not approving insurance policies that contain discretionary clauses. And the opinion letter stands on its own. It does not say it applies prospectively only. In fact, the commissioner has said in his amicus brief in this case that the opinion letter merely restates the department's longstanding policy that such provisions violate California insurance law. Now, there's a second action, and that is the withdrawal of approval of several insurance policies containing discretionary language, including the policy that's at issue in Ms. Beda's case. And that action, the withdrawal of approval, is prospective only. In other words... Well, why would that apply to this case as well? This policy was issued before the department issued its letter. The notice to withdraw approval applies prospectively only to the policy in this case. We agree with that. What does not apply prospectively only is the department's opinion that the policy language violates state law. Is there any California case that I can read that says that by the California insurance commissioner giving an opinion through his counsel that says what he thinks ought to be that that is thereafter state law? There is an... The opinion letter is not state law. Well, that seems to me to be the crux of your argument. If we go under California normal contract law, the common law, one could argue that some contracts are illegal because they're declared illegal by the state. But under common law, one would have to find some state court, California state court, which would somehow suggest that this opinion by the commissioner is law. I've not found any court that says that. In fact, I've found California court which say it's good advice. It's good what we might think about, but we're the ones who declare the law and we don't declare it the law. And therefore, the California commissioner can withdraw insurance policies, can suggest that certain insurance policies thereafter are not any good. But as far as trying to set the law in the state of California, I got nobody saying he can. Well, the statute authorizing opinion letters authorizes the commissioner to interpret the law and section 10291.5 of the insurance code, which is the statute that the commissioner is interpreting in his opinion letter, authorizes him to make the determination whether policy and language conforms with state law. And he's made the same kind of an opinion previously and determined that this was okay until he got to this point where he decides to issue an opinion and say it isn't. Well, the commissioner never issued an opinion saying that discretionary language was acceptable. So then it was acceptable under the common law? There were policies that were approved under section 10291.5 initially in the early 1990s. And the commissioner said that at that time the effect of the discretionary language on the claims decision under the policy was not something that the department understood. The New York insurance commissioner has explained that rather well. He said we originally approved these policies because we believed that the discretion granting language was merely a recapitulation of the insurer's right to decide claims. Once we learned that the discretionary language actually undermines the promise to pay benefits on the occurrence of a stated condition, the commissioner stopped approving those policies. But I'd like to return to the question of the effect of the letter that you've raised, Mr. O'Brien. Before you do, let me answer this question. Two questions. You acknowledge you don't have a viable appeal if there's a discretionary review of this? You acknowledge that, don't you? No, we do not. Okay. In other words, even the discretionary you think was abuse of discretion? Yes, there was an abuse of discretion. All right. Well, let's handle the first thing. At the time the policy was issued, before the letter was promulgated by the commissioner, the policy was a legitimate contract between the insured and the insurer. Is that correct? Yes. How can the state then make that contract illegal in some way? I mean, you go back as far as Dartmouth College case, where you cannot, the government cannot declare a contract illegal if it is illegal when it's made. How can a state agency convert a legal contract between an insured and an insurer by FIAT to be illegal in part of its provisions, consistent with the Dartmouth College case? Well, the insurer is, excuse me, the insurance commissioner under the insurance code is entitled to withdraw approval of policies. Well, you do that prospectively. Everyone acknowledges that. But how can he do that if the contract was a binding valid contract when it was issued? How can the state, consistent with the inviability of a contract law, declare it illegal? The commissioner is entitled to say what the application of 10291.5 is to the policy. But the question before this court, and this returns also to your question regarding the effect of the opinion letter, is whether that policy provision is enforceable in the sense that it confers discretion such that the administrator would be entitled to deferential review under trust law. Because the deference that is due to the administrator, and this is what this court said in Abatey, the deference that is due to the administrator is the deference that is due under trust law. This is not a question of contract law. It is a question of trust law. The deference that is due is a deference that's due under trust law. And under trust law, courts will not enforce an illegal provision of a trust. Here, the commissioner has said that this language violates section 10291.5. Now, if the court- That suggests that just because the commissioner says it, it's therefore illegal under California law. I've found a lot which say, give him deference. His opinion has some weight to it. But it doesn't say anything where it is absolutely by court found illegal. And in fact, I've found just the opposite. I've found that they say, no problem, prospectively we'll go with what we have to do. But backwards, giving it effect to policies already issued and approved prior to his submission, we're not going to do anything. Well, the California Superior Court in the Woodworth case, which is cited in our briefs and included in the addendum, did what some federal courts, not all, have done under these same circumstances, which is that the Woodworth court looked at the opinion letter. And this is a state court considering an ERISA section 502A1B claim, just like the claim in this case. Because, of course, state courts have concurrent jurisdiction over those claims. So this state court in Woodworth is looking at the legality of the provision in light of the question whether it will be enforced to give rise to deferential review to the administrator's decision. And the Woodworth court said that the commissioner's opinion is sufficient to defeat enforceability of that provision for purposes of establishing deferential review. Have we had any head-on collision in the California courts between the desire of companies offering these kind of plans and the commissioner's position? In other words, where the commissioner said, you can't do business in the state of California with that clause and that policy. And the company has gone to any court and said, he can't do that. Well, there are two points on that, your honor. The commissioners, the commissioners- How about starting with a yes or no? That's a good suggestion, thank you. The answer is yes, in that Hartford Insurance Company sued the commissioner over the question of the notice of withdrawal of approval of Hartford's policies. That's the Hartford v. Garamendi case that proceeded in the Superior Court of San Francisco. And Judge Warren's decision denying the petition for a writ of mandamus that Hartford sought is in the briefs. It's in our statutory addendum and also in the commissioner's brief. That's winding its way through the California appellate system, is that right? No, actually that's not correct. After Judge Warren denied the petition for a writ of mandamus, the party settled. So that Judge Warren's decision is the final decision in that litigation. What has the California Supreme Court said to this issue? The California Supreme Court has not spoken to this issue. The second answer to your question though, your honor, is that the commissioner has pointed out in his brief that because the department had this longstanding policy- May I interrupt you just for a second? When you say the California Supreme Court has not spoken to this issue, you mean whether you can prevent a company from doing business. The court has said, hasn't it, that an insurance commissioner's opinion does not have the force of law. Yes. I'm sorry, I meant that the Supreme Court has- I just wanted to be clear. I knew what you meant. I just wanted to be clear. Go right ahead. It hasn't spoken to the issue in Hartford v. Garamendi. The commissioner has pointed out in his brief to this court that he had, the department has had this longstanding policy originating in the mid-1990s of not approving these policies. And what he's explained in his brief is that although many insurers objected to the policy and asked the commissioner to change it, no insurer ever sued the commissioner for a writ of mandamus to force the commissioner to approve a policy. What, leaving the insurance letter to a side one, what's your backup argument if it is a deferential standard? Why do you think deference was abused here? Thank you, your honor. Yes, the intervening abating decision requires that a standard be applied that was not applied in this case. The standard that was applied in this case was what the abating court refers to as untempered abuse of discretion review. After abating, the court would need to analyze the factors set forth in abating to determine the degree of skepticism with which Unum's decision should be reviewed. Before I talk about the factors that support skepticism under abating though, I'd like to briefly address the merits of the district court's finding that Unum properly relied on the opinion of the Connecticut physician, Dr. Abeli's. There's three problems with that finding. The first is that while Dr. Abeli's opinions make clear that he has a major disagreement with Ms. Beda's treating physicians over her diagnosis and her treatment. His letters do not, his letters support that she's disabled. So for example, Dr. Abeli's wrote that, and this is at page 234 of the administrative record, that Ms. Beda does not have an inflammatory arthritis, but has arthralgias, myalgias, and fatigue associated with fibromyalgia syndrome and depression. And he continued that Ms. Beda is not improving because her symptoms are not responsive to the medications used. So because there's nothing in the plan that requires that a participant be disabled due to a particular diagnosis, and Dr. Abeli says that, agrees that Ms. Beda has these symptoms, it was an abuse of discretion for Unum to rely on that opinion. Second, it's evident from Dr. Abeli's opinions that he assessed total disability. In other words, he assessed whether Ms. Beda could work at all, because he said that Ms. Beda, there was no documented abnormality to keep her from working on at least a part-time basis, and that's at page 419 of the administrative record. He went on to say there's no evidence in the clinical notes that allows an objective reader to conclude that disability exists. So the only way to harmonize those two statements, that she could work on at least a part-time basis, and that there's no evidence of disability, is that Dr. Abeli's believed he was being asked to assess total disability, a total inability to work, but this plan does not require total disability. Everyone agrees that Ms. Beda can work on a part-time basis, but the plan does not require total disability. It never mentions the term total disability. Instead, it contemplates that a participant is disabled if she's unable to perform the duties of her occupation on a full-time basis, which is true of Ms. Beda, and Dr. Abeli's doesn't support a disagreement with that. But Abedi would lead us to this conclusion, which is that it's an abuse of discretion review, but a more skeptical and thorough review of the decision based on what we would have in front of us. And, therefore, on a more thorough and skeptical review, considering all of the record, if I find that the district court gave careful consideration to all of the involved facts and all of the arguments raised by both sides, that the district court's decision, its extensive and detailed questioning during argument, demonstrate a careful evaluation of all of the facts contained in the administrative record, and that UNUM engaged in an ongoing good faith exchange of information, then how do I get by the discretionary review? Because the district court evaluated the evidence with no skepticism, as it was required to do under Atwood, which was the law at the time. Under Abedi, the district court would have been required and will be required to review the facts with skepticism and to take into consideration factors such as UNUM's history, UNUM's history that's been documented by other courts as stated in our briefs, of parsimonious claims handling. Abedi requires that to be taken into consideration. That's evidence that UNUM has repeatedly denied benefits to deserving participants. It would be required to look at UNUM's failure to seek clarification from Dr. Abeli's. If Dr. Abeli's is saying both that Ms. Beda is not disabled and that she can work only part-time, what does he mean? UNUM never asked. The decision to repeatedly request information from Ms. Beda rather than going to her health care providers. These facts are evidence that would support a high degree of skepticism on abusive discretion review. And it does not matter that the district court carefully reviewed the evidence under an untempered abusive discretion standard. The evidence needs to be reviewed again under a skeptical abusive discretion standard. You've used up all your time. Our questions took you a little bit beyond your time. We'll give you a minute for rebuttal. Thank you, Your Honor. Thank you for your argument, counsel. Counsel?  Yes, good morning, Your Honor. Good morning. I represent the appellees in this action, and I'd first like to address the district court's use of the abusive discretion standard in this case. The district court correctly rejected Beda's argument that the insurance commissioner's notice of withdrawal of approval acted retroactively to nullify the discretionary authority in this case. The commissioner's ruling itself says that it's prospective only. The statute which the insurance commissioner relies on provides that it can only be a prospective withdrawal of approval, and the cases, almost every case that has looked at it has been in accord with that. Was Abati, I think they pronounced it Abati when I was on the in-bank panel, was that before or after the district court ruled in this case? It was after the district court ruling, Your Honor. So Abati is intervening authority as we would describe it? It is. However, certainly the district court didn't apply Abati because it didn't have the benefit of it, but it did perform a very, very careful scrutiny of the record, both during a lengthy for ERISA trial standards, a very lengthy ERISA trial, where the record was discussed in detail during the argument, and then also during summary judgment motions on the standard of review where a plaintiff raised issues in the administrative record which she believed showed a conflict of interest, and the court considered all of that information at that time as well. So even though Abati had not been decided at that point, the court did use a high degree of scrutiny in evaluating. The in-bank had not been decided, but the panel decision had been, was on the books, wasn't it? The decision had not been issued yet. I believe it was. The panel decision. The three-judge panel decision, I think, was available at that time, but my memory is that the in-bank decision contains a much more detailed analysis of the different shades, if you will, of abusive discretion. It does, Your Honor. Which leads me to this question. Considering what's at stake for the plaintiff here, why wouldn't it make sense to return this to district court and ask the district court to apply Abati? Your Honor, because the Abati decision makes clear that there's no sliding scale as has been applied in other circuit courts. So there's not 10 different standards of review that are applied. What Abati made clear is that where a plan grants discretion under Firestone, that abusive discretion is going to be applied. Now, the question is, how carefully is the court going to scrutinize the administrative record? So perhaps it can be analogized to a magnifying glass. How big is that magnifying glass going to be? In this case, Judge Schiavelli used a very large magnifying glass. Judge Schiavelli carefully asked questions during the argument on this case, explored every one of plaintiff's arguments, both during the argument for the ERISA trial, the extensive briefing. I think there were nine briefs in this case before Judge Schiavelli, at least nine. And that also included the summary judgment motion, where all of the issues in the administrative record and the arguments the plaintiff is making were addressed at that time as well. So the question would be, under Abati, certainly there's a that initial standard of conflict is met, because the funding source and the administrator are the same. But what would that then cause Judge Schiavelli to do? It would cause a more careful scrutiny, which has already been done in this case. What evidence did he review, if any, that was not in the administrative record, but was beyond the administrative record? She. She. What was reviewed? The evidence that the conflict, I think, was. Conflict evidence. I believe that there was, there were documents regarding Dr. Bellis and the other reviews that he had conducted, and I believe that there were also, I believe that there were also claim documents. Were there any documents that the appellant moved to be considered by the district court, which it refused to consider because irrelevant or whatever? The appellant did make the claims that were argued here about the parsimonious claim handling, and I do not believe that in the summary judgment motion the court directly addressed those arguments that were made, and instead focused on the issues, the arguments that were being made with respect to the analysis in this case. What should we make of the fact that the Social Security Administration determined that she was, in fact, disabled? Not much, Your Honor. In Black and Decker. We get these cases all the time on appeal from district court through the commissioner of the administration, and it's a pretty tough standard. And it is, but in. You have to be able to show that you cannot, you are permanently disabled from performing any work in the national economy. The key, we're from being a parking lot guard on up. That's true, Your Honor. The key difference, however, which was addressed in Black and Decker v. Nord by the Supreme Court is that in the Social Security context, the Social Security Administration has regulations which provide that treating physicians have to be given deference. And the Supreme Court specifically addressed that issue and said that it did not make sense to apply that kind of standard to ERISA administrators in this type of cases. It's a totally different prism for analyzing these decisions, because where you have a treating physician in the Social Security circumstance, then you should be entitled to that. The best argument there is that there have been awards under ERISA which have been declined under Social Security. That's true as well, Your Honor. What do we make of Judge Ciavelli's statement that, quote, she had serious questions regarding whether plaintiff is permanently disabled? Your Honor, I think that in that case, this is a very, very lengthy administrative record. Plaintiff did have doctors to support the decision. So I think that what Judge Ciavelli is saying there is that he's not making a de novo review. He is not taking evidence and making a decision as a fact finder with respect to whether Ms. Beda is disabled or not under the plan. And I think that's the distinction that he was making there, simply that he is not making a de novo determination. He is simply attempting to determine whether the administrator abused its discretion in this case. Judge Ciavelli's a he. He, yes. That's why I would say the district court. Okay. But I guess that there are two ways of looking at that phrase, has serious questions regarding whether plaintiff is permanently disabled. One would be, and I take it you concede this is not the case, that the judge was doubting her credibility. I don't think that that's the case. What he apparently is saying is that this is a very hard question. Right? Yes, I agree, Your Honor. Okay. Then again, why in this circumstance should we not send this back to apply law on the exact current parameters of abuse of discretion application in the Avadi case, which was not extant at the time the judge ruled? The reason, Your Honor, is simply because I think that Judge Ciavelli has already applied such a heightened degree of scrutiny in this case, that although he wasn't applying the Avadi decision, he essentially gave a much higher degree of scrutiny to the administrative record than he needed to. If he was just going to say, this is just pure abuse of discretion, you know, and the basis of the decision is just that. If he accorded that high, high degree of deference to the administrator. In this case, he himself carefully analyzed the record, carefully analyzed all of plaintiff's arguments, and decided that ultimately the abuse of discretion standard had not been met, and also that plaintiff had had ample opportunity. Plaintiff was represented by counsel during the administrative proceedings. Plaintiff submitted an appeal. After the appeal was denied, she had the opportunity to submit further information, which was then considered, and then considered again by the physician who had reviewed the record initially. And Judge Ciavelli considered all of those facts. So I would argue that at this point, there wouldn't really be any further heightened scrutiny to be applied. Does your client concede that as between de novo and abuse of discretion, the standard of review makes a difference here? Well, I, from First Unum's perspective, it made the correct decision in this case, based on all of the information that was before it. What I'm asking is if the choice were simply between applying de novo review or abuse of discretion, would that make a difference? Does your client agree that on these facts, that makes a difference? No. Okay. Why? I mean, how can you answer yes or no? You don't know what a de novo review would be. Do you? I mean, how do you know what a de novo review would be? You're right, Your Honor, I don't know what a de novo review would be. It's a hopeful prediction on your part, but you can't say what a de novo review would or would not result in here, can you? No, I cannot. The arguments on summary judgment presented to the judge, I'm interested in those. You suggest that they embodied arguments regarding, if you would, prejudice on your client's part? Yes, Your Honor, those arguments were made under Atwood, and plaintiff took the position that the record showed sufficient conflict, so that Judge Schiavelli should apply a de novo standard of review. And they presented all of the arguments they would normally present in order to have a de novo review and eliminate the discretionary review, and therefore, he would have been full well knowledgeable of such arguments in his case. I'm interested in providing the discretionary review that he provided, is that your argument? Yes, Your Honor. I think we've got a handle on where this case is. You've got seven minutes, if you'd like to, you certainly can, you've done just fine so far. No, Your Honor, if you have no further questions. I don't see any. Thank you very much for coming in today. Appreciate your argument. Counsel? Here is where at least I may be. Tell me how proceedings would be different if abati were applied. The proceedings would be different because abati requires, I'm saying abati, I should be saying abati, abati requires a different standard of review. Judge Schiavelli, when he reviewed the evidence that we presented regarding Unum's conflict, and of course, we could not have anticipated abati. We had no idea what abati would say. We were presenting evidence going to the Atwood standard, and that standard presented Judge Schiavelli with only two alternatives, either pure untempered abuse of discretion review or de novo review. Under abati, there's a different standard. Abuse of discretion with skepticism. But the district court did consider the allegation of conflict of interest, which you put forward. I'd like to just refine that. What other information, if this were remanded to the district court, would you present to the district court, which was not before the district court in the original adjudication? Well, we would present, well, let me step back and say. What was it presented before? That you could present under abati, which you didn't, which you weren't able to present prior to abati. Well, I can only answer that question in part, because when we conducted discovery going to the standard of review in this case, we didn't have the benefit of abati to guide us in conducting discovery. So you want new discovery. So you would want new discovery as well. We would request additional discovery. But off the top of your head, without doing the additional discovery, what additional evidence would you submit to the district court that was not before the district court, a la abati or beti, whatever it is? The evidence going to UNAM's parsimonious claims-granting history, which is an important part of the standard under abati. That was not considered under Atwood, that we did not present. Well, that's a conflict standard, that the adjudicator is the carrier itself. No, it's a question of how has this particular carrier, what is its history in other cases with regard to deciding claims. The abati panel says that's an important factor. It was not a factor under Atwood, and it was not something that we argued to Judge Schiavelli. We did argue it to the magistrate judge on the discovery motion, and I think that's what Ms. Shea is recalling when she says that parsimonious claims-granting history was addressed in the district court. But it was not addressed before Judge Schiavelli. What else would you present to the district court that you didn't present before? Besides that they're very, that they're prejudiced against claimants. Parsimonious in approvals. History of denying, of unreasonably denying claims. I think that's the core of the argument, but I think it's very important to recognize that this is not, it is not heightened scrutiny. Abati does not require heightened scrutiny or a larger magnifying glass. It requires in the ultimate decision that the district court not fully defer, as this district court did, and he was compelled to do under Atwood to defer to the decision of the insurer. Abati requires that the court view that decision with skepticism. Judge Schiavelli did not have the option to do that in this case, and abati requires that he be given that option. Okay.
judges: Hawkins, Smith, Cowen